UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARLOS FIGUEROA                    :
                                   :                    PRISONER
         v.                        :          Case No. 3:04cv454 (SRU)
                                   :
COMMISSIONER OF CORRECTION         :


**RULING ON PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Carlos Figueroa, is currently confined at the MacDougall Correctional

Institution in Suffield, Connecticut.  He brings this action pro se for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2254, challenging his 1993 conviction on the charges of sexual assault in

the first degree, kidnapping in the first degree and robbery in the second degree.

I.       Procedural Background

In January 1993, a Connecticut Superior Court jury convicted Figueroa of one count of

sexual assault in the first degree, one count of kidnapping in the first degree and one count of

robbery in the second degree.  Figueroa was sentenced twenty years' imprisonment.  (See Pet.

Writ Habeas Corpus at 1.)  On August 15, 1995, the Connecticut Supreme Court affirmed the

judgment of conviction.  See State v. Figueroa, 235 Conn. 145, 665 A.2d 634 (1995).

In July 1993, Figueroa filed a habeas petition in state court challenging his conviction on

the ground that he was not afforded effective assistance of counsel at trial.  On August 2, 2001,

the court dismissed the petition.  See Figueroa v. Warden, No. CV 93-0001726-S, 2001 WL

987779 (Conn. Super. Ct. Aug. 2, 2001).  On December 31, 2002, the Connecticut Appellate

Court affirmed the decision of the habeas court.  See Figueroa v. Commissioner of Correction, 74

Conn. App. 352, 812 A.2d 164 (2002).  On March 11, 2003, the Connecticut Supreme Court

denied the petition for certification to appeal the decision of the Connecticut Appellate Court.

See Figueroa v. Commissioner of Correction, 262 Conn. 954, 818 A.2d 780 (2003).

On March 18, 2004, Figueroa filed the present federal habeas petition raising seven

grounds for relief.   The respondent has filed a memorandum in response to the petition.

II.   Factual Background

On direct appeal, the Connecticut Supreme Court recounted the following facts.

> In the early morning hours of January 1, 1984, the victim was
> seated in her car outside of a friend's home in the city of Hartford
> when an individual, later identified by the victim as [Figueroa],
> opened her passenger side door and forcibly entered the vehicle.
> [Figueroa] placed a knife to the victim's throat, ordered her into the
> passenger seat, got into the driver's seat and drove away at a high
> rate of speed. During the thirty minute ride, [Figueroa] cursed at
> the victim, told her to keep her head down and not to look where
> they were going, and struck her several times.
>
> [Figueroa] eventually parked the car in an area near a gray barn in a
> tobacco field. He then ordered the victim out of the car. When she
> refused to leave the car, he ordered her into the back seat, where he
> began to disrobe her. When the victim expressed a fear that
> [Figueroa] would rip her clothing, he allowed her to remove her
> own clothing. During this process, she lost a red leather belt with a
> distinctive belt buckle in the shape of a fish.
>
> [Figueroa] then sexually assaulted the victim for approximately
> twenty to thirty minutes. Initially, [Figueroa] forced her to have
> vaginal intercourse and then, when she refused to perform oral sex
> on him, [Figueroa] compelled her to have anal intercourse. After
> repeated assaults, both parties dressed themselves. While dressing,
> [Figueroa] took the victim's gold chain, which was worth
> approximately $600. Because the chain had been a gift from her
> father and was of great sentimental value, she asked [Figueroa] to
> take her car instead of the chain, but [Figueroa] refused, stating
> that he needed the chain to buy drugs.
>
> Thereafter, [Figueroa] drove the victim back to Hartford. During
> the ride, the victim attempted to study [Figueroa's] face. At that

time, she was sitting in the passenger seat, approximately one and one-half feet away from [Figueroa]. Upon arriving back in Hartford, [Figueroa] parked the victim's car on Huntington Street and fled on foot. The victim then went to a friend's house and, later that evening, went to Mount Sinai Hospital for treatment. She reported the crimes to the police on January 3, 1984.

On March 20, 1984, the victim accompanied two investigating officers, Hartford Detective Mildred Wertz and State Trooper William Finegan, in an attempt to locate the tobacco field where the assault had taken place. During the trip, the victim identified an area near a gray barn at the Culbro tobacco farm in Ellington as the place where the assault had occurred. In addition, she identified a red belt, found by an employee of the tobacco farm near the barn, as the belt she had lost during the attack. [Figueroa] had been employed at the tobacco farm during July and August, 1983.

In September, 1984, the victim positively identified [Figueroa] from an array of photographs shown to her at the police station. Thereafter, an arrest warrant was issued for [Figueroa] (September, 1984 warrant), but he could not be found. [Figueroa] was considered a fugitive from 1984 until 1990, when he was located in New York City, at which time a new warrant was issued for his arrest. * * *

At trial for the charges relating to the victim, [Figueroa] maintained that he was innocent of abducting and assaulting the victim and claimed that, at the time of the incident, he had been celebrating the New Year's Eve holiday with friends and relatives throughout the entire night and early morning hours.

Figueroa, 38 Conn. App. at 803, 663 A.2d at 1096 (citations omitted).

III.    Standard of Review

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if Figueroa claims that his custody violates the Constitution or federal laws. See 28 U.S.C. § 2254(a). A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in

state custody with regard to any claim that was rejected on the merits by the state court unless the

adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme Court "may be either a generalized

standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a

standard in a particular context."  Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied,

537 U.S. 909 (2002).  Clearly established federal law is found in holdings, not dicta, of the

Supreme Court at the time of the state court decision.  See Carey v. Musladin, 549 U.S. 70, 74

(2006).

A decision is "contrary to" clearly established federal law where the state court applies a

rule different from that set forth by the Supreme Court, or if it decides a case differently than the

Supreme Court on materially indistinguishable facts.  See Bell v. Cone, 535 U.S. 685, 694

(2002).  A state court unreasonably applies Supreme Court law when the court has correctly

identified the governing law, but unreasonably applies that law to the facts of the case.  The state

court decision must be more than incorrect; it also must be objectively unreasonable, "a

substantially higher threshold."  Schriro v. Landrigan, ___U.S.___, 127 S. Ct. 1933, 1939 (2007).

When reviewing a habeas petition, the federal court presumes that the factual

determinations of the state court are correct.  Figueroa has the burden of rebutting that

presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Boyette v. Lefevre, 246

F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of correctness is afforded

state court findings where state court has adjudicated constitutional claims on the merits).

Because collateral review of a conviction applies a different standard than the direct appeal, an

error that may have supported reversal on direct appeal will not necessarily be sufficient to grant

a habeas petition.  See Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

IV.     Discussion

Figueroa raises seven grounds for relief: (1) the trial court improperly denied his motion

to dismiss the victim's identification of him as the perpetrator; (2) the trial court improperly

admitted evidence of uncharged misconduct; (3) the trial court unfairly marshaled the evidence in

its instructions to the jury regarding the uncharged misconduct; (4) the trial court improperly

denied his request for an adverse inference instruction regarding the destruction of evidence; (5)

the trial court improperly denied his motion to dismiss the charges on the ground that the service

of the warrant was untimely; (6) the trial court improperly commented on the principle of

reasonable doubt in its instructions to the venire panels; and (7) his attorney at trial failed to

provide him with effective assistance of counsel.

A.     Motion to Dismiss Pre-Trial Identification

The trial court denied Figueroa's motion to dismiss the victim's September 1984

identification of him.   Figueroa asserts that the trial court's denial of the motion was improper

because the identification was both unreliable and tainted by suggestive procedures.

The Connecticut Supreme Court determined that the following additional facts were

relevant to this claim.

> In December, 1992, the trial court held a hearing on [Figueroa's]
> motions to suppress the victim's identification and to preclude the
> state from introducing evidence of uncharged misconduct. . . . At
> the hearing, the victim testified at length concerning her
> opportunity to observe her assailant and her subsequent

identification of [Figueroa] as her assailant. She testified that she had obtained a good look at her assailant, particularly during the ride back to Hartford.  She also testified that on January 3, 1984, she had given the police a description of the man who had sexually assaulted her.

The events between the victim's initial description of her assailant on January 3, 1984, and her identification of [Figueroa] in September, 1984, are unclear. The victim testified that, on one or more occasions, in January and March, 1984, she had been shown photographs by the police for the purpose of identifying her assailant. She also testified that prior to September, 1984, she had identified [Figueroa] from photographs shown to her by the police, even though she had never signed the back of a photograph signifying a positive identification.  Contradicting the victim's testimony, however, was a March, 1984 report by Wertz stating that the victim had been shown twelve photographs of Hispanic males, including [Figueroa], but that the "complainant was unable to make an identification." The victim also testified that at some point she saw a newspaper article from The Journal Inquirer, dated April 7, 1984, reporting that [Figueroa] had sexually assaulted a Betty Doe on February 19, 1984. The article included a photograph of [Figueroa].

In September, 1984, the victim identified [Figueroa] as her attacker from an array of photographs. She acknowledged this identification by signing and dating the back of his photograph. At trial, the victim testified that in September, 1984, she was "positive" [Figueroa] was her assailant. She stated that her identification of the defendant was not through the newspaper article, but rather was based solely on her memory and that she had "never [been] more positive in [her] life" of her identification.

At trial, [Figueroa] filed a motion to suppress the victim's prior identification of him, arguing that the identification procedure was not sufficiently reliable under the totality of the circumstances to be admissible. The state argued that the victim's identification was reliable because just two days after the attack, she had given the police an accurate description of her assailant, and therefore, the evidence should be admitted.

Although the trial court recognized that the identification procedure might have been suggestive, it concluded that, under the totality of the circumstances, the identification was sufficiently reliable to be admissible, regardless of whether the victim had

            identified [Figueroa's] photograph in either the January or March,
            1984 photographic arrays.

Figueroa, 235 Conn. at 150-53, 665 A.2d at 69-71 (citations and footnotes omitted).

      In analyzing whether a pre-trial identification was constitutionally deficient, the Court

first looks to claims of undue suggestiveness.  If the identification is found to be unduly

suggestive, the Court then considers whether the in-court identification was, nevertheless,

independently reliable.  See Manson v. Brathwaite, 432 U.S. 98, 114 (1977).  In determining

whether the identification of a defendant by a witness is reliable independent of the unduly

suggestive identification procedures, the Court looks to factors set out in Neil v. Biggers, 409

U.S. 188 (1972).  These factors include: "[1] the opportunity of the witness to view the criminal

at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior

description of the criminal, [4] the level of certainty demonstrated by the witness at the

confrontation, and [5] the length of time between the crime and the confrontation."  Id. at

199-200.  No single factor is dispositive and the question of independent reliability must be

assessed in light of "the totality of the circumstances."  See id.

      The Connecticut Supreme Court determined that it need not decide whether the

identification procedures were unnecessarily suggestive because the totality of circumstances

demonstrated that the victim's identification of Figueroa was independently reliable.  See

Figueroa, 235 Conn. at 157, 665 A.2d at 72-73.   It then considered the factors set forth in Neil to

determine whether the identification of Figueroa was reliable even assuming the procedures were

unnecessarily suggestive.  See id.  The Court noted that the victim was able to observe Figueroa

during the assault and on the ride from the location of the assault back to Hartford for at least

ninety minutes, within two days of the assault she gave a complete description of Figueroa to the

police, she was absolutely sure that Figueroa was the individual who assaulted her when she picked him out of a photo array in September 1984 and the nine-month period of time between the assault and the victim's identification of Figueroa as her assailant was not long enough to render the identification unreliable.  See id. at 157-59, 665 A.2d at 73-74.   The Court concluded that it was reasonable for the trial court to determine that the victim's September 1984 identification of Figueroa was reliable in view of the totality of the circumstances.  See id. at 160, 665 A.2d at 74.  The Connecticut Supreme Court's conclusion that the trial court did not err in denying the motion to suppress the identification of Figueroa by the victim was not contrary to or an unreasonable application of Supreme Court law and was not based on an unreasonable determination of the facts.  Thus, the petition for writ of habeas corpus is denied on this ground.

  B. <u>Marshaling of Evidence</u>

   Figueroa contends that the trial court violated his Due Process rights when it unfairly marshaled the evidence during its charge to the jury on the evidence offered by the State regarding the assault by him on another victim.  Figueroa argues that the trial court erred in mentioning only the similarities between the assaults on the two victims.

   The instruction by the trial court regarding the evidence of the prior assault by Figueroa was as follows:

> Certain evidence was offered by the State for the purpose of identification of [Figueroa] as the perpetrator of the crimes alleged herein. That is the evidence offered by Betty Doe as to the assault upon her on February 19th, 1984. The assaulter who she identified in court as [Figueroa], along with the testimony of ex-Trooper Finegan that he had received a cardboard box from Betty which she testified [Figueroa] had used to attempt to free Betty's car from the mud in a tobacco field. Trooper Finegan testified that he dusted for fingerprints on the box and discovered a full and several partials which he brought to the State Police Forensic Laboratory in Meriden. And Mr. O'Brien testified that he had analyzed and

8

matched the latent print to the left thumbprint of [Figueroa]. Mr. Finkle corroborated the match in his testimony. This evidence is not offered and cannot be offered to show that [Figueroa] had a propensity to commit crime or that since he committed a crime like the one alleged here that he must have committed this one. It is offered to show similarities between the misconduct to Betty and the crime charged here. You first must determine whether you believe that the misconduct against Betty occurred. If you find that [Figueroa] did perpetrate the misconduct against Betty you must then examine the similarities between the two events to determine whether such similarities are so unique and distinctive as to reasonably believe that they were like a signature or fingerprint so as to demonstrate that the same person committed both crimes or both misconducts. It goes without saying, of course, that if you don't believe [the victim], and therefore, that the event she testified happened on January 1st, 1984, did not occur then you need not make the comparison. On the other hand, if you do believe the event occurred you must make the comparison. However, if you do not find that the similarities are strong enough to be like a signature or fingerprint you must exclude the evidence from your minds and it is to have no influence on your decision. The similarities that you may consider that have been produced in evidence that two similar young women with a motor vehicle was accosted by a male. You may also consider the use of a knife to the front of the neck or throat in both cases. You may also consider that they both were abducted in their own car with the male doing the driving and they in the front passenger's seat; that both were told not to look at the male; that both were told to put their heads down so that they could not see where they were going. You may consider whether or not the descriptions given by each, [the victim] and Betty, were similar. And as I recall the testimony of both, that the male was well dressed; that both testified to the demand for oral sex; that the location of the assault, there was evidence that both occurred on Culbro tobacco field; that both testified that they were requested to completely disrobe; that both were requested in the alternative for sexual activity. As I recall, Betty, explained to the male that she was not then presently with birth control present; was given the alternative of vaginal or oral sex; that [the victim], after vaginal sex was requested, for oral sex, and upon refusal the male put the request in the alternative either oral or anal sex; that in both testimonies of [the victim] and Betty there was no testimony of an actual violent act being used at the time to insist on one particular sex act; but the alternatives were offered as if the victims were making the choice in a manner, and therefore, were submitting; the offer after the assault to transport the victims where [Figueroa]

would leave.

Figueroa, 235 Conn. At 169 n.23, 665 A.2d at 78 n.23.

Due process of law guarantees a criminal defendant a fair trial before an impartial judge and jury in a neutral atmosphere.  See U.S. Const. amend. V, XIV; see Glasser v. United States, 315 U.S. 60, 82 (1942) (trial judge must ensure proper conduct of trial).  A judge in a jury trial need not act only as a moderator, but may also summarize the evidence for the jury, and comment on it, if he or she chooses, subject to certain limitations.  See Quercia v. United States, 289 U.S. 466, 469-70 (1933).  The judge is not to impose his or her own opinions on the jury, assume the role of an advocate by making arguments to the jury, add to or distort the facts, or present his or her own theories if they are not strongly grounded in the evidence.  See id. at 470-71.  A court's decision to marshal evidence in a jury charge only deprives a defendant of a fair trial if the charge "so infected the entire trial that the resulting conviction violates due process." Henderson v. Kibbe, 431 U.S. 145, 154 (1977).

Although the Connecticut Supreme Court did not cite United States Supreme Court cases on improper marshaling of the evidence, the standard the court applied is consistent with the Supreme Court law.  The Connecticut Supreme Court reviewed the entire jury charge and reasoned that "[a]lthough the trial court . . . provide[d] a more detailed account of evidence regarding the similarities between the assaults, it . . . discuss[ed] the differences between the sexual acts requested and those that were actually performed," instructed the jury that it need not accept as a proven fact the similarities between the assaults and that the testimony of the victim of other assault was only to be considered regarding the question of identification of Figueroa as the perpetrator and "could not be used to show that he had a propensity to commit crimes." Figueroa, 235 Conn. at 171, 665 A.2d at 79.  The Court further noted that the trial court's charge

10

included a detailed explanation of Figueroa's theory of defense and an outline of the exculpatory evidence admitted in support of Figueroa's alibi.  Id.  The Court concluded that, viewed as a whole, the trial court's instructions did not mislead the jury regarding the evidence of prior misconduct and did not deprive Figueroa of a fair trial.  The Connecticut Supreme Court did not unreasonably apply clearly established federal law in holding that the trial court's marshaling of the evidence did not rise to a due process violation when considering the jury charge in its entirety.   The petition is denied on this ground.

>    C.    Miscellaneous Claims Involving Trial Rulings

Figueroa contends that the trial court erred in admitting evidence of prior  misconduct in the form of testimony of a victim of a similar crime committed by him.  He argues that the prior assault was not sufficiently similar to be admissible as signature evidence.   On appeal to the Connecticut Supreme Court, Figueroa raised this claim as a state law claim and cited only to Connecticut cases.   Figueroa raises that same claim here.

Figueroa argues that the trial court erred in refusing to give an adverse inference instruction regarding the state's failure to introduce the victim's belt as evidence.  On appeal to the Connecticut Supreme Court, the plaintiff argued that the trial court's refusal to give the adverse inference instruction was improper in view of other Connecticut cases addressing a defendant's entitlement to an adverse inference instruction.   The plaintiff did not contend that the trial court's error violated federal law.   The claim here mirrors the claim raised by Figueroa on appeal to the Connecticut Supreme Court.

Figueroa also contends that the trial court erred in failing to grant his motion to dismiss the charges against him on the ground that the service of the arrest warrant upon him violated the statute of limitations set forth in Connecticut General Statutes § 54-193.   The trial court held an

11

evidentiary hearing on Figueroa's claim and found that a presumption could be used to find the warrant issued in 1984, and the delay between the issuance of the arrest warrant and service of the arrest warrant upon him was not unreasonable.   Figueroa's claim is predicated on a violation of state law.

The only claims cognizable in a federal habeas corpus action are that a state conviction was obtained in violation of some right guaranteed by the United States Constitution or other federal law.  See 28 U.S.C. § 2254(a) (federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in state custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"); Estelle, 502 U.S. at 67-68 (noting that federal courts may not review or grant relief for a claim that a state conviction was obtained in violation of state law); Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.").   The claims that the trial judge erred when he admitted testimony of the victim of another crime committed by Figueroa, refused to give an adverse inference instruction and denied a motion to dismiss the charges on state statute of limitations grounds are matters of state law and are not cognizable in this action.  Accordingly, the petition for writ of habeas corpus is denied on these grounds.

D.    Challenge to Jury Instructions

Figueroa argues that during his preliminary instructions to the venire panels, the trial judge made improper gender-based comments regarding the concept of reasonable doubt.  He focuses on one passage of the instructions in which the court informed the jury that a woman's intuition is not based on reason and could not be used to establish reasonable doubt.  Pet. Writ Habeas Corpus at 16.1.

To warrant habeas corpus relief, Figueroa must establish that the instruction "by itself so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 72; see also Cupp v. Naughten, 414 U.S. 141, 146 (1973) (petitioner must show "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment"). That the instruction violated state law, without more, does not warrant federal habeas relief. See Estelle, 502 U.S. at 71-72. When analyzing a claim of an improper jury instruction, the court must consider the instruction in the context of the charge as a whole and the trial record. See id. at 72; Cupp, 414 U.S. at 146-47 (jury instructions "must be viewed in the context of the overall charge," and a "single instruction to a jury may not be judged in artificial isolation.").

On direct appeal, the Connecticut Supreme Court considered the challenged portion of the preliminary instruction in the context of the entire charge, including the final instructions to the jury. The Court determined that Figueroa was not prejudiced by the reference to a woman's intuition in the preliminary instructions because the "jury was fully and correctly instructed as to the principles of [Figueroa's] presumption of innocence and the state's burden of proof beyond a reasonable doubt at final instructions." Figueroa, 235 Conn. at 183. Thus, the Connecticut Supreme Court concluded that the preliminary and final instructions, as a whole, were proper. Although the Connecticut Supreme Court did not cite to a United States Supreme Court case, it applied the proper standard in reviewing this claim. Thus, the decision is not contrary to Supreme Court law.

The Connecticut Supreme Court properly considered the gender-based reference in context and evaluated the propriety of the jury charge as a whole. The Court concluded that the preliminary instructions did not deprive Figueroa "of his constitutional right to a fair trial"

13

because the final jury instructions on reasonable doubt were full and correct.  Figueroa, 235

Conn. at 185, 665 A.2d at 86.  After reviewing the charge and considering the Connecticut

Supreme Court's analysis, I conclude that the determination of the Connecticut Supreme Court

was not an unreasonable application of Supreme Court law.  The petition for writ of habeas

corpus is denied on this ground.

      E.     <u>Ineffective Assistance of Counsel</u>

Figueroa argues that counsel at trial was ineffective because he failed to: (1) adequately

impeach and cross-examine witnesses offered by the State and properly object to questions from

the State; (2) object to questions by the prosecutor and move to strike answers of witnesses; (3)

properly investigate the charges and prepare an adequate defense; and (4) seek a jury charge on

the affirmative defense of due diligence on the part of the police to charge him.

An ineffective assistance of counsel claim is reviewed under the standard set forth in

<u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To prevail, Figueroa must demonstrate, first,

that counsel's conduct fell below an objective standard of reasonableness established by

prevailing professional norms and, second, that this deficient performance caused prejudice to

him.  <u>See id.</u> at 687-88.  Counsel is presumed to be competent.  Thus, Figueroa bears the burden

of demonstrating unconstitutional representation.  <u>See</u> <u>United States v. Cronic</u>, 466 U.S. 648, 658

(1984).  To satisfy the prejudice prong of the <u>Strickland</u> test, Figueroa must show that there is a

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different;" the probability must "undermine confidence in the outcome" of the

trial.  <u>Strickland</u>, 466 U.S. at 694.  The court evaluates counsel's conduct at the time the

decisions were made, not in hindsight, and affords substantial deference to counsel's decisions.

<u>See</u> <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005).  To prevail, Figueroa must demonstrate both

14

deficient performance and sufficient prejudice.  See Strickland, 466 U.S. at 700.  Thus, if one prong of the standard has not been demonstrated, the remaining prong need not be considered.

In their analysis, the state courts applied the standard established in Strickland.  Because they applied the correct legal standard, the state court decisions cannot meet the "contrary to" prong of section 2254(d)(1).  Figueroa may obtain federal habeas relief only if the state court decisions were an unreasonable application of that standard to the facts of this case.

1.    Failure to Impeach and Cross-Examine Witnesses, Object to Prosecutor's Questions and Move to Strike Answers of Witnesses

Figueroa argues that trial counsel failed to adequately cross-examine and impeach witnesses offered by the State and also failed to object to questions by the prosecutor or move to strike answers of witnesses.  At the hearing held in the state habeas proceeding, trial counsel testified regarding his criminal trial experience.  At the time of the criminal trial, he had practiced law for two years, with the majority of his practice in criminal defense.  Trial counsel stated that he had tried a couple of Part A criminal matters in the two years preceding Figueroa's case.  See Figueroa v. Warden, No. CV931726, 2001 WL 987779, at *4 (Conn. Super. Ct. Aug. 2, 2001).

The state court reviewed trial transcripts containing the cross-examinations of the witnesses offered by the State and concluded that trial counsel had effectively challenged the credibility of those witnesses, particularly the victim.  The court also noted that the trial transcripts included repeated objections to the testimony of the State's witnesses.  See id.  The state court concluded that trial counsel's performance was not deficient.  In addition, the state court held that, even if trial counsel's performance were deficient, Figueroa did not demonstrate that this conduct prejudiced his case.  See id. at *5.

Figueroa has presented no evidence to overcome the presumption of correctness afforded

to the state court's findings.  I conclude that the state court's determinations regarding the effectiveness of trial counsel when cross-examining the state's witnesses and objecting to questions posed to those witnesses on direct and the absence of prejudice from the alleged deficiencies are not unreasonable applications of the Strickland standard.  Thus, the petition is denied on these claims.

2.   Failure to Properly Investigate and Prepare Adequate Defense

Figueroa asserts that trial counsel failed to adequately investigate the charges against him and properly prepare a defense, specifically that trial counsel failed to challenge the photo array, call the investigating officer as a witness and obtain DNA tests.  The respondent contends that Figueroa failed to raise the specific instances of inadequate investigation on appeal to the Connecticut Appellate and Supreme Courts and therefore that Figueroa has not exhausted his state court remedies regarding the specific instances of alleged inadequate pre-trial investigation. I conclude that Figueroa's claim of inadequate pre-trial investigation fails on the merits because Figueroa's conviction is not in violation of the Constitution or other federal law; accordingly, I do not reach the question of exhaustion of state court remedies.  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

a)   Failure to Prepare Adequate Defense

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."  Strickland, 466 U.S. at 691.  The habeas court found that trial counsel relied on Figueroa's clear assurance that he could supply many alibi witnesses for the time of the alleged

16

sexual assault and was focused on these witnesses and the alibi defense at trial.   In addition to

the alibi defense, trial counsel focused on the inconsistencies in the victim's identification of

Figueroa as her assailant.   The habeas court concluded that trial counsel's decision to proceed

with the alibi defense was not unreasonable or outside the scope of competent professional

conduct.   Figueroa has failed to show that the state court's determination that counsel's decision

to focus mainly on the alibi defense was reasonable trial strategy was contrary to or an

unreasonable application of Supreme Court holdings.   Thus, the petition is denied with respect

to this claim.

b) <u>Failure to Adequately Investigate</u>

Figueroa has a right to have counsel perform an adequate investigation.  He has no right,

however, to have counsel pursue every evidentiary lead regardless whether the lead is likely to

reveal evidence beneficial to the defense.  Counsel has provided effective assistance if he makes

reasonable decisions to investigate or not investigate certain leads.  Even an unreasonable

decision not to investigate will not rise to the level of ineffective assistance if that decision had

no effect on the conviction.  <u>See</u> <u>Strickland</u>, 466 U.S. at 691-92.

With respect to Figueroa's claims that trial counsel failed to challenge the photo array and

call the investigating officer as a witness, the habeas court noted that neither the photo array nor

the potential testimony of the investigating officers was available at trial.  The habeas court

concluded that trial counsel's challenges to the photo arrays through his cross-examination of the

victim and his stipulation to the police report instead of calling the investigating officer as a

witness constituted reasonable trial strategy that fell within the wide range of competent

professional conduct.  The state court's determination that counsel's decisions were reasonable

and well within the scope of competent professional legal assistance was not contrary to or an

17

unreasonable application of Supreme Court law.  Thus, the petition is denied with respect to this claim.

At the beginning of the trial on the state habeas petition, Figueroa withdrew the claim that trial counsel did not obtain DNA results after both Figueroa and the respondent concluded that no such DNA evidence had ever been collected or existed.   Because Figueroa failed to provide any proof that DNA evidence existed or was collected, the fact that trial counsel did not request that evidence be tested for DNA was not objectively unreasonable.  In addition, Figueroa failed to demonstrate that the outcome of his trial would have been any different had counsel conducted DNA testing of evidence collected in connection with his case.  Figueroa has not satisfied either prong of the Strickland standard.  Accordingly, the petition is denied on this ground.

               c.      Failure to Seek Jury Charge on Affirmative Defense of Statute of Limitations

Figueroa contends that trial counsel chose to raise by way of a motion to dismiss the affirmative defense of statute of limitations in response to the delay in charging him with sexual assault and robbery. Figueroa contends that this decision constituted ineffective assistance of counsel.

"Strategic choices, made after thorough investigation of the law and facts . . . are virtually unchallengeable. . . ." Strickland, 466 U.S. at 690-91.  Here, trial counsel chose to raise the statute of limitations defense in a motion to dismiss rather than by requesting a jury charge on the defense.   The court determined that there was no evidence to suggest that the decision to move to dismiss on statute of limitation grounds was an unreasonable trial strategy.  The fact that trial counsel's strategy did not succeed in exonerating Figueroa does not create a claim for ineffective assistance of counsel. See United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987) ("We

will not second-guess trial counsel's defense strategy simply because the chosen strategy has

failed."). The habeas court concluded that trial counsel's tactical choice did not constitute

conduct falling outside the wide range of reasonably competent professional assistance.

Furthermore, the court concluded that Figueroa had not demonstrated that his case was

prejudiced by that tactical decision.   Thus, the habeas court's conclusion that trial counsel's

decision to raise the statute of limitations defense in a motion to dismiss constituted reasonable

trial strategy was not contrary to or an unreasonable application of Supreme Court law.   The

habeas petition is denied on this ground.

V.    Conclusion

        The Petition for Writ of Habeas Corpus [**doc. #1**] is **DENIED**.  Because Figueroa has not

made a substantial showing of the denial of a constitutional right, a certificate of appealability

will not issue.  The Clerk is directed to enter judgment and close this case.

        **SO ORDERED** this 23rd day of January 2009, at Bridgeport, Connecticut.


                          /s/ Stefan R. Underhill
                         Stefan R. Underhill
                         United States District Judge